IN THE UNITED STATES DISTRCT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Crystal Martinez,<br>　　　Plaintiff,<br><br>　　　v.<br><br>Arnett & Burgess Pipeliners, Ltd,<br>　　　Defendant | )<br>)<br>)<br>)   **COMPLAINT**<br>)<br>)<br>) |

## NATURE OF THE ACTION

1. This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 ("Title VII"), the Equal Pay Act ("EPA") and the Fair Labor Standards Act ("FLSA") to correct unlawful employment practices based upon sex, retaliation, unequal pay and unpaid overtime and to provide appropriate relief to Plaintiff, Crystal Martinez ("Martinez").

2. As alleged with greater particularity below, Martinez alleges that Arnett & Burgess Pipeliners, Ltd. ("Arnett & Burgess"), discriminated against Martinez based on her sex, retaliated against her, and terminated her in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a) ("Title VII"). Further, Arnett & Burgess failed to pay Martinez equally as required under the EPA, 29 U.S.C. §206(d) and failed to pay Martinez overtime pay as required under the FLSA, 29 U.S.C. §203.

## JURISDICTION AND VENUE

3. This court has jurisdiction pursuant to 28 U.S.C. §1331, federal question jurisdiction, because this action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII and §2000e-2(a) and 3(a) of Title VII, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a, as well as the EPA and FLSA.

4. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of North Dakota.

## PARTIES

5. Plaintiff Martinez is an employee pursuant to 42 U.S.C. §2000e-(f).

6. Defendant Arnett & Burgess is an employer engaged in industry affecting commerce and was located at all pertinent times at 605 11th Ave. SW, Watford City, North Dakota and within the meaning of 42 U.S.C. §2000e-(b).

## FACTUAL BACKGROUND

7. Since at least June 26, 2019, Arnett & Burgess has engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. §2000e-2(a)(1).

8. Martinez was initially hired by Wesley Maldonado ("Maldonado"), the welding boss at Arnett & Burgess, to be a Welding foreperson, because she had many previous years of experience as a foreperson and supervisor. She had been hired by Arnett & Burgess and agreed to start at $24/hour and a $100/day per diem.

9. Martinez left her family, including her children, in Texas to come to North Dakota to work for Arnett & Burgess, believing it was a good opportunity to be a supervisor and make $24 per hour.

10. But when Martinez arrived and started her job on June 26, 2019, she was told by Maldonado that she would start as his right-hand person, on probation, and see how she did. Maldonado told her if she did well, she might then become a foreperson.

11. Maldonado admitted to discriminating against Martinez on the basis of sex. He told her that, because she was female, he could not start her as a boss, and she could not have her own truck and responsibilities. Rather than working as a foreperson and being a supervisor as promised, Martinez took orders and measurements for Maldonado. She also was paid less ($20/hour and $100 per day per diem) than she had been promised and had agreed to when she decided to leave Texas and come work in North Dakota.

12. After Martinez returned to work in August of 2019 from a brief trip home to Texas to put her daughters in school, things started to get strange and ugly with Maldonado. Other employees commented and asked about it. One contractor pulled Martinez aside and asked her what she had done to Maldonado. They also told her about Maldonado's well-known history of bringing in women employees to sleep with him and then terminating them.

13. Maldonado began with inappropriate and sexually harassing comments to Martinez that quickly escalated. He told Martinez, "I can't live without you." Maldonado would say to Martinez, "Come sleep with me." Martinez continually rebuffed his unwelcome advances. She found herself in an impossible situation since Maldonado

2

was her boss and controlled all aspects of her work setting. All Martinez wanted to do was her job, which she needed in order to support her family.

14. When Martinez had an issue with not receiving her entire check one pay period, she went to Maldonado to try and get it straightened out. She had called him about it at the end of the workday and Maldonado's text response was that he would get it fixed in the morning – and then he asked her if she could come and stay the night, telling Martinez he would give her the dollars owed and more hours.

15. The harassment also contributed to safety issues on the job site. When Martinez was injured by a launcher by Maldonado and almost knocked into a hole, she was bruised and did not go into work the next day. Maldonado called her 103 times that day. While she told Maldonado she needed to rest, he told her that she needed to come in to work. This action reflects both Maldonado's unhealthy obsession with Martinez and his interest in covering up his bad actions.

16. This harassing conduct was unwelcome. Martinez had repeatedly told Maldonado she was just there to do her job and his sexual harassment was unwelcome and needed to stop. When Maldonado failed to stop the harassing conduct, Martinez tried to talk with his bosses, Todd Glenn ("Todd") and Chris Glenn ("Chris"). Instead of meeting with Martinez, Todd and Chris ignored her requests to meet with them. Apparently, Maldonado and Chris were the best of friends, which only served to enable the continued sexual harassment of Martinez.

17. Things got so bad for Martinez that she even attempted to speak with Chris's wife, Kara, literally begging her for five minutes to talk to her husband about the ongoing sexual harassment she was suffering at the hands of her boss. Kara told Martinez that Maldonado did this sort of thing all the time. Kara confirmed that Maldonado was a known sexual harasser to Arnett & Burgess management. The company continued to knowingly and intentionally let Maldonado work for them and sexually harass Martinez.

18. When Martinez went to Chris's office the next morning asking for five minutes of his time, instead of being helpful with the situation, he literally kicked her out of his office. He did not want to hear about something he already knew, that Maldonado was continuing to harass another of his female employees, this time Martinez. Chillingly, when Martinez left Chris's office that morning, Maldonado was standing at the bottom of the stairs. Instead of abiding by federal law and promoting a harassment free workplace, Chris had texted Maldonado and sent the issue back to him, the known harasser.

19. Upon the advice of Kara, Martinez took the issue to Todd. Martinez texted Todd that she needed to speak to him. Todd must have notified Maldonado of her contacting him because soon thereafter Maldonado came to Martinez and told her in no uncertain terms that she would lose her job if she went to Todd. Martinez was scared.

20. Kara told Martinez to keep trying. But it became clear management was not going to do anything to stop the continuing sexual harassment at the hands of Martinez's boss and that her boss was now threatening her if she complained of the harassment. Management was not just complicit in Martinez's continued harassment, but punished Martinez for seeking help.

21. After Martinez attempted these conversations complaining about the sexual harassment, things got even worse for her at work. She was punished and forced to literally work seven days a week, much of it overtime. And she was forced to work much of the additional overtime she put in off the clock. Maldonado told Martinez that they could only report 12 to 14 hours of work each day, even when she worked longer days. Martinez would sometimes work 16- or 18-hour days and was not paid for this extra time.

22. Martinez was forced to ride in the truck daily with Maldonado for three months – and nobody with Arnett & Burgess listened to her. Martinez was just trying to do her job and was arguing with Maldonado on location and at one point told him to "fuck off." She was desperate.

23. Even after her numerous complaints, the sexual harassment continued. At one point Maldonado told Martinez, "I love you. I'll leave my family for you."

24. Because she was from Texas, Martinez was living in an RV in the yard. Maldonado would come to her door at 5:30 a.m., unannounced and uninvited. She would see his truck outside her place at night. She was told by other workers that they would see Maldonado's truck outside her RV in the morning. Maldonado was stalking her.

25. There was a Human Resources person, Staecy Martinez ("Staecy"), hired at the yard. Shortly after Staecy started, Martinez went to Staecy and told her she needed help. Staecy told Martinez not to tell anyone about what had happened to her.

26. Martinez kept escalating the situation up the supervisory ladder. She specifically asked Graham Hunt, Arnett & Burgess Corporate Development and Human Resources Manager, what he was going to do about such behavior. Martinez also sent Hunt pictures of Maldonado's truck outside of her home during the time her complaints of sexual harassment were being investigated.

4

27. Martinez told Hunt about the texts Maldonado had been sending her and Hunt – Arnett & Burgess's companywide HR manager – asked Martinez to send the texts to him. She did so.

28. The texts were vulgar and sexual. One of the emails from Martinez shows a text of a cartoon of a man and woman of color with the woman naked sitting on the man's face. One text had Maldonado telling Martinez "I'm just crazy about you."

29. There were many more texts from Maldonado to Martinez that Arnett & Burgess management were provided by Martinez. Those included Maldonado sending Martinez a picture of a nude man and woman engaged in sex and the caption at the top is "'AIN'T NO SEX LIKE' and at the bottom is 'WE NOT SUPPOSE TO BE FUCKIN' SEX."

30. The string of texts Arnett & Burgess received from Martinez, at its request, also included Maldonado's September 4, 2019, text at 5:41 am to Martinez that said "I wanted to spend the night with you last night. . ." "I hate the feeling of you reaching out to somebody else for help. . ." Part of the email string from Martinez included a screen shot of the text Wesley sent Martinez stating, "Is Your Current Partner Really the One" and has two hearts connected and at the bottom reads "Wesley & Crystal Martinez." Martinez responded to Maldonado at the time, telling him he's crazy.

31. There were more sexually harassing texts on September 6, 2019. Maldonado sent Martinez several close-up pictures of her backside that he had taken when she was required to ride with him in his truck at work. Maldonado also sent Martinez a text with a picture of an oriental woman sitting on a water gusher shooting water between her legs and the post states "When she realizes your tongue game strong."

32. Maldonado repeatedly texted pictures of Martinez's backside to her. He sent her five pictures he had taken on October 5, 2019 at 2:38 pm. Accompanying one of the photos, Maldonado told Martinez that he can't wait until this – referring to her backside – can be his. These texts were all sent via email to Hunt by Martinez at his request. Hunt's response to Martinez on both October 30 and October 31 was to ask her to send him "the screen shots we discussed." And she did. Hunt's November 1, 2019, at 11:51 am email to Crystal is "Thanks, Crystal. Will you be sending more? You indicated there was a large number of texts? Much appreciated."

33. Hunt was aware of the constant harassing texts by Maldonado as reflected in his emails to Martinez requesting she provide him with the harassing texts she had received from Maldonado.

34. When the company finally investigated Martinez's claims of ongoing sexual harassment by Maldonado, he was eventually fired in late 2019.

35. Even though it was Maldonado under investigation, it was Martinez who continued to be harassed and retaliated against by higher ups at Arnett & Burgess. During the time Arnett & Burgess investigated the serious allegations of sexual harassment made by Martinez against Maldonado, Arnett & Burgess put Martinez on administrative leave, forcing her off site while Maldonado, the sexual harasser, continued to be permitted to work for several more weeks.

36. The management Martinez interacted with was united against her. Chris was hugging Maldonado when he walked him out after Maldonado was finally terminated by Arnett & Burgess.

37. After Maldonado was fired things quickly deteriorated even further for Martinez at Arnett & Burgess. She was retaliated against for reporting unwelcome and unlawful harassment by her supervisor, and HR tried to cover it up.

38. Additionally, after complaining to management about the continuing sexual harassment, managers singled out Martinez to her co-workers and the other employees as the bad actor that had led to Maldonado being investigated and terminated, telling them that she "was dangerous." Specifically, it was Chris who had a meeting with staff and told everyone, including her co-workers, what had happened. Chris laid the blame for Maldonado being fired at Martinez's feet. Chris retaliated against Martinez, telling her coworkers that she was the reason Maldonado was fired, and that she was dangerous. All Martinez did was report unlawful conduct and ongoing sexual harassment she had been subjected to and that the company knew about but refused to address.

39. Once Maldonado was fired, Martinez simply wanted to go back to doing her job She had done nothing wrong. When Martinez finally was permitted to return to work, Chris and Todd were still working there, running the show as usual. They were not fired despite their role in the retaliation against Martinez and the sexual harassment cover up and ongoing and continued protection of Maldonado, a known serial sexual harasser.

40. Martinez came back to work under Chris, but in an entry level job in an area outside of her welding area and as a field worker instead of the foreman job she had been originally hired to do. When Martinez complained to Chris about returning to work at an entry level position, Chris told her she should just be grateful she still had a job and did not lose her pay.

41. Taking their cue from their boss – Chris – other employees began treating Martinez like she was the bad apple. When Martinez finally came back to work, she found a note on her truck that said, "Just think about your kids and just leave." Martinez went to the Watford City police to try and get help. Martinez believes the handwriting looked like Kara – Chris's wife's – handwriting.

42. Martinez was told she could only ride with Stuart, the new guy who had the dozer. Dozers usually do not have helpers. Stuart told Martinez that she was not as bad as they (the company) said she was. When Martinez asked what he meant, Stuart told her of the company meeting where staff were warned about her, told that she causes problems and that she got Maldonado fired. Stuart told Martinez that he was told not to be alone in the truck with Martinez. When Martinez brought this information to Hunt, he told her to talk to Chris, even though Hunt knew that Chris had retaliated against her and would not take action to stop the retaliation. Not surprisingly, rather than help with the perception of the workers, Chris would not talk to Martinez at all.

43. Martinez was humiliated by this continuing retaliation after she had returned to work after the investigation and firing of Maldonado. She had bravely reported Maldonado's illegal behavior and instead of being welcomed back, her supervisors continued to single her out, blame her, and tell her coworkers she was the bad actor. Her supervisors retaliated against her for reporting the sexually harassing behavior.

44. When Martinez came back to work after the investigation she was retaliated against and punished. She was no longer allowed to work with her team, the welding team. Her co-workers shunned her, having been falsely told by managers at Arnett & Burgess that she was the reason Maldonado was fired and that she was dangerous. She was never given the "promotion" to the welding supervisor position she had been promised upon her initial hiring in summer 2019.

45. Martinez was granted some needed time off over Thanksgiving and was then never allowed to return to work. Even when other co-workers were being called back, Martinez was not allowed by Arnett & Burgess to return to work. Martinez could not get anyone to answer her calls after the New Year about returning to work on January 6, 2020, as Arnett & Burgess had represented to her would be the report back date.

46. Arnett & Burgess eventually told Martinez via email that they did not think there were any positions for her.

47. Even after she was terminated Martinez's fear continued, as did the threats. Martinez received numerous phone calls/voice messages and text from Maldonado, her former boss and the serial sexual harasser on April 6, 2020, and also from Maldonado's wife, verbally degrading her and telling her that if she was thinking of doing anything about what happened to her that she should remember she had been sent home like a whore by Arnett & Burgess. Maldonado called Martinez numerous gross and filthy names and specifically told her that he had been offered his job back so she could see where the company loyalty was. Martinez eventually had to block Maldonado's phone number.

48. Even after all the sexual harassment and retaliation that Martinez had been subjected to by Chris and the company, Martinez was told by Arnett & Burgess that Chris runs the yard the way he wants to. This was told to Martinez while Arnett & Burgess knew that this was the same Chris who – as Maldonado's boss – had allowed Maldonado to continue working despite knowing of his sexually harassing behavior and turning Martinez's coworkers against her.

49. Martinez has struggled to find work after not being called back and has not been able to find work and earn an income since that time. With the onset of the COVID pandemic she has been unable to find work or provide for her family.

50. At the time Martinez worked for Arnett & Burgess she was being paid $20/hour, an amount less than male workers doing similar work and significantly less than the $24/hour and $100 per day per diem she had been hired at. Arnett & Burgess had Martinez working seven days a week much of the time but would only approve smaller number of hours per day for her to be paid (only 12 to 14) than she actually worked. Martinez is entitled to overtime pay (time and a half) for all the hours she worked over 40 hours a week. Martinez has, to date, been without work for approximately 14 months. She was making $20/hour per week for 40 hours plus $100 per day per diem. That's $800/week for the hourly work and $500/week for the per diem. But Martinez was working several hours of overtime a day (and not being paid for all of it) that she is entitled to paid for as well.

51. Martinez is a single parent with three children, one a special needs child, and her financial hardship has made it incredibly hard for her to afford the medications her child needs. This has been emotionally exhausting for Martinez. She has been diagnosed with PTSD, depression, and anxiety. She is taking Zoloft and Buspirone as well as prescribed medication so she can sleep (she has had nightmares). She was initially put on 25 mg of Zoloft a day and that has been consistently increased and is now at 150 mg a day. When she initially returned home in January 2020, she cried all the time. She was ashamed and felt horrible. She was irritable. She was ashamed

and embarrassed that she was in such a dark place and unable to be the provider her children needed her to be. She has been struggling to navigate the darkness as she continues to be unemployed and struggles to provide for herself and three children in the midst of a pandemic. She continues her regular mental health counseling to this day. She had no issues with depression, anxiety or PTSD before the sexual harassment and retaliation she was subjected to at Arnett & Burgess.

## CLAIM OF SEX DISCRIMINATION

52. Plaintiff realleges paragraphs 1 through 50 and incorporates them herein.

53. Defendant's actions as set forth above, including Maldonado's actions in supervising Martinez, and the actions of Maldonado's supervisors and Arnett & Burgess's HR management team, constitute discrimination against Plaintiff based on her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-(a)(1).

## CLAIM OF RETALIATION

54. Plaintiff realleges paragraphs 1 through 52 and incorporates them herein.

55. Defendant's actions as set forth above, including termination, threats, and failure to pay proper wages as a result of Martinez' complaints regarding the harassment she was subjected to, constitute retaliation against Plaintiff in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. §2000e-3(a).

## CLAIM OF EQUAL PAY ACT VIOLATION

56. Plaintiff realleges paagraphs1 through 54 and incorporates them herein.

57. Defendant's actions as set forth above, including but not limited to their failure to pay her the same wage as others in her same position and hiring her for one position and forcing her to work a different, lower paying and lower scaled position when she moved to North Dakota from Texas to take the position, constitute a violation of Plaintiff's rights under the Equal Pay Act, 29 U.S.C. §206(d).

## CLAIM OF FAIR LABOR STANDARDS ACT VIOLATION

58. Plaintiff realleges paragraphs 1 through 56 and incorporates them herein.

59. Defendant's actions as alleged above, including failure to pay proper overtime and proper wages for the time Martinez worked, constitute a violation of Plaintiff's rights under the Fair Labor Standards Act, 29 U.S.C. §203.

60. As a result of Defendant's actions Plaintiff has sustained damages in such amounts as will be proven at trial.

9

## ADMINISTRATIVE PROCEDURES

61. Several of the managers at Arnett & Burgess threatened Martinez if she reported her treatment to anyone. Staecy, the HR manager, told Martinez not to tell anyone about what she had been subjected to. Then when Martinez first spoke with Hunt in Arnett & Burgess's Canada office, Hunt told her not to say a word to anybody or she would not have a job and they would ruin her name in the industry so she would not be able to find a job in the future.

62. After Martinez returned to work for Arnett & Burgess (following being put on leave while the company investigated her sexual harassment complaint) she was afraid of Hunt and Arnett & Burgess, reasonably fearing that if she said anything she would be fired and never be able to work in her industry again.

63. After being told she could not come back to work, and after being threatened by Hunt, Stacey, Maldonado and his wife several times continuing up to April 6, 2020, Martinez eventually contacted the Equal Employment Opportunity Commission (EEOC) online on June 30, 2020, to file a charge of discrimination and retaliation. The EEOC offices were physically closed due to the pandemic and they were not taking in person charge filings. When Martinez initially contacted the EEOC online on June 30, 2020, Martinez was apparently required by the EEOC to fill out a form where she wrote that she was subjected to sex discrimination and retaliation by her supervisors at Arnett & Burgess. When the EEOC online process asked Martinez to describe the last adverse action at Arnett & Burgess, she indicated, in good faith, that she believed the last adverse action was the April 6, 2020, harassing and threatening phone calls and texts from Maldonado, her former Arnett & Burgess boss and the individual who had continuously sexually harassed her during the entire duration of her employment.

64. Martinez contacted the EEOC online again on or about August 1, 2020 and was advised that the first phone interview time available for her to meet with someone from the Minneapolis EEOC office was November 25, 2020 at 2:00 pm. An appointment was scheduled for that first available time.

65. On November 23, 2020, the EEOC investigator reached out to Martinez to ask if she could make herself available for a phone call with the EEOC on that day, and not November 25, 2020, as previously scheduled by the EEOC. That was the first person who contacted Martinez from the EEOC. Martinez immediately made herself available by phone to the EEOC investigator and spoke with the investigator.

66. The EEOC investigator, after speaking with Martinez for the first time on November 23, 2020, indicated that under normal circumstances the EEOC routinely flags an inquiry as being short on time and if flagged, arrangements would be made to assist

the individual sooner. When Martinez spoke with the EEOC investigator on November 23, 2020, and she finally was given the opportunity to tell them the facts and the timing, the investigator told her that while she had a claim of sexual harassment and retaliation, her claim was not timely since April 6, 2020, was not actually the last adverse action she sustained, and his determination was that her time to file an administrative charge had passed. Instead of completing a charge of discrimination for Martinez, the investigator told Martinez she was too late.

67. The EEOC investigator indicated that the EEOC had flagged April 6, 2020, as the adverse action date given by Martinez and utilized by the EEOC for purposes of contacting Martinez to be sure she filed a timely charge, and the EEOC system did not register her case as being short on time.

68. After speaking with Martinez on November 23, 2020, the EEOC investigator would not complete a charge for Martinez because he had determined her charge was not timely. After being contacted again and advised Martinez's rights to file a lawsuit is only permitted upon satisfaction of the statutory EEOC procedures, the EEOC investigator completed a Charge of Discrimination and Retaliation for Martinez which she reviewed and signed and filed online on December 2, 2020. On December 3, 2020, the EEOC issued its Dismissal and Notice of Rights, advising Martinez that the EEOC had determined that her charge was not timely filed.

69. Since December 3, 2020, the EEOC investigator assigned to Martinez's case has been contacted numerous times via email by counsel for Martinez requesting all documents that comprise the investigative file, including anything Martinez completed relating to advising the EEOC of adverse actions. There has been no response by the EEOC.

70. Martinez would have filed a complaint in federal court in the summer of 2020 if the statute did not require her to file a charge with the EEOC. The EEOC procedures in place due to the COVID-19 pandemic led to the EEOC taking longer to contact Martinez. Martinez continued to be threatened by Arnett & Burgess management through the spring of 2020, and her charge with the EEOC was timely. If the filing was not timely, the deadline should be tolled or any defense should be estopped on the basis of the conduct of Defendant and its agents, including its managers both current and former as outlined above.

71. Martinez has taken all reasonable actions necessary and required of her to comply with the administrative filing requirements and the intentions and spirit of the law, in compliance with administrative procedures.

72. The unlawful employment practices complained of by Martinez were intentional.

73. The unlawful employment practices complained of were done with malice or with reckless indifference to the federally protected rights of Martinez.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court:

A. Order Defendant to make Martinez whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;
B. Order Defendant to make Martinez whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices described herein, including but not limited to emotional pain and suffering, loss of enjoyment of life and humiliation in amounts to be determined at trial;
C. Order Defendant to pay Martinez punitive damages for its malicious and reckless conduct in amounts to be determined at trial;
D. Award Martinez her costs, disbursements and attorney's fees as permitted by law; and
E. Grant such other relief as the court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by her complaint.

Dated this 24th day of February, 2021.

                                                                        BY: s/Thomas D. Fiebiger
                                                                        Thomas D. Fiebiger
                                                                         Fiebiger Law, LLC
                                                                         ND ID # 04190
                                                                         6800 France Ave. S., Suite 190
                                                                         Edina, MN 55435
                                                                         612.399.6474
                                                                         Attorney for Plaintiff

## VERIFICATION

The undersigned Plaintiff has reviewed the Complaint and knows or believes that all allegations that the Plaintiff has personal knowledge of to be true. The Plaintiff believes the allegations that the Plaintiff does not have personal knowledge to be true based on specified information, documents or both. I declare under penalty of perjury that the foregoing is true and correct.

Dated: _____                                                                            _____

                                                                                                     Crystal Martinez

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised by her complaint.

Dated this 17th day of February, 2021.

> BY: s/Thomas D. Fiebiger
> Thomas D. Fiebiger
> Fiebiger Law, LLC
> ND ID # 04190
> 6800 France Ave. S., Suite 190
> Edina, MN 55435
> 612.399.6474
> Attorney for Plaintiff

## VERIFICATION

The undersigned Plaintiff has reviewed the Complaint and knows or believes that all allegations that the Plaintiff has personal knowledge of to be true. The Plaintiff believes the allegations that the Plaintiff does not have personal knowledge to be true based on specified information, documents or both. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/17/21

Crystal Martinez